UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**DEBORAH L. COLEMAN,**

    **Plaintiff,**

**v.**

    Case No. 2:11-cv-0049
    **JUDGE GREGORY L. FROST**
    **Magistrate Judge E.A. Preston Deavers**

**THE OHIO STATE UNIVERSITY MEDICAL CENTER,**

    **Defendant.**

## OPINION AND ORDER

This matter is before the Court on Defendant The Ohio State University Medical Center's motion to dismiss (ECF No. 5), Plaintiff Deborah L. Coleman's memorandum in opposition to Defendant's motion to dismiss (ECF No. 10), Defendant's reply in support of its motion to dismiss (ECF No. 11), Plaintiff's motion to voluntarily dismiss certain claims without prejudice under Federal Rule of Civil Procedure 41(a)(2) (ECF No. 9), Defendant's memorandum in opposition to Plaintiff's 41(a)(2) motion (ECF No. 12), and Plaintiff's reply in support of her motion (ECF No. 13).  For the reasons outlined below the Court will treat Plaintiff's voluntary dismissal motion as a motion to amend Plaintiff's complaint under Federal Rule of Civil Procedure 15(a)(2) and hereby **GRANTS** that motion.  In addition, the Court **GRANTS** in part and **DENIES AS MOOT** in part Defendant's motion to dismiss.

1

## I.  Background

For more than twenty years, Plaintiff Deborah L. Coleman, a 58-year-old African-American female, was employed by Defendant The Ohio State University Medical Center ("the Medical Center").  Plaintiff was hired as a student nurse and became a registered nurse in 1992.  At the time of her termination, Plaintiff was employed as a Registered Staff Nurse in the Medical Center's Medical-Surgical unit.

In January 2008, Kimberly Wierick, another Medical Center employee, became Plaintiff's supervising nurse.  Prior to this time, Plaintiff had never been formally disciplined as an employee.  Under Wierick's supervision, Plaintiff alleges that she was subject to consistent verbal harassment, belittling, and disciplinary action.  According to Plaintiff, this treatment included the refusal to allow her to request days off of work, an action Plaintiff alleges was contrary to the Medical Center's policy.

In response to this perceived mistreatment, Plaintiff filed claims with the Ohio Civil Rights Commission ("OCRC") on December 9, 2009 and April 1, 2010.  Plaintiff filed identical claims with the United States Equal Employment Opportunity Commission ("EEOC").  The first claim charged the Medical Center with age discrimination, and the second charged the Medical Center with age discrimination and with taking retaliatory action in response to the first OCRC/EEOC complaint.  Both complaints were signed by Plaintiff and included her description of the claims she was making against the Medical Center.  The OCRC investigated and dismissed both complaints, determining that there was no probable cause to believe that the Medical Center had engaged in discrimination.  (ECF No. 5-1 at 17-20.)

On March 16, 2010, the Medical Center placed Plaintiff on administrative leave, and on April 14, 2010, Plaintiff was terminated. Immediately following her termination, Plaintiff filed a third complaint with the OCRC and the EEOC, again alleging retaliation for her prior complaints. The complaint was signed by Plaintiff and included her description of the alleged retaliation. On September 9, 2010, the OCRC dismissed Plaintiff's complaint, again basing its determination on a finding of no probable cause. (ECF No. 5 at 21-22.)

In accordance with her rights under the Ohio Revised Code, Plaintiff sought judicial review of the OCRC's decision in this Court. Ohio Rev. Code Ann. § 4112.06 (West 2011). Plaintiff asserted federal and state claims for age discrimination and racial discrimination, as well as state law claims for breach of implied contract, promissory estoppel, and intentional infliction of emotional distress. Plaintiff sought declaratory and injunctive relief, as well as compensatory and punitive damages for each of her claims.

On March 2, 2011, the Medical Center filed a motion to dismiss certain claims filed by Plaintiff, namely, all of her state law claims, state race discrimination claims filed under the Ohio Revised Code, federal race discrimination claims filed pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq.* ("Title VII"), claims filed under 42 U.S.C. § 1981 ("Section 1981"), and age discrimination claims filed under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621. (ECF No. 5.) The Medical Center asserted that this Court lacks subject matter jurisdiction over Plaintiff's federal race discrimination claims because of Plaintiff's failure to exhaust her administrative remedies. In addition, the Medical Center argued that Plaintiff's remaining claims were precluded as a matter

3

of law because of the Medical Center's immunity under the Eleventh Amendment to the United States Constitution. In response, Plaintiff contested the Medical Center's motion as it related to the race discrimination claims, but conceded that her state law claims, Section 1981 claims, and ADEA claims were foreclosed by the Medical Center's Eleventh Amendment immunity. (ECF No. 10.) Along with her response, Plaintiff filed a motion to voluntarily dismiss these claims without prejudice under Federal Rule of Civil Procedure 41(a)(2). (ECF No. 9.) Plaintiff requested that the Medical Center's motion to dismiss be held in abeyance until the Court reached a decision on Plaintiff's motion to voluntarily dismiss her foreclosed claims. The Medical Center filed a response to Plaintiff's voluntary dismissal motion, arguing that all of Plaintiff's claims should be dismissed with prejudice. (ECF No. 12.)

The parties have completed briefing on Plaintiff's motion for voluntary dismissal of her state law claims, Section 1981 claims, and ADEA claims without prejudice and on the Medical Center's motion to dismiss. Both motions are now ripe for review.

## II. Plaintiff's Motion for Voluntary Dismissal without Prejudice

### A. Standard

In response to the Medical Center's motion to dismiss, Plaintiff moves for dismissal of her state law, Section 1981, and ADEA claims without prejudice. (ECF No. 9.) In this motion, Plaintiff purports to utilize Rule 41(a)(2) of the Federal Rules of Civil Procedure to dismiss these claims. Federal Rule of Civil Procedure 41(a) is only available to dismiss entire actions, not single claims. Fed. R. Civ. P. 41(a)(1)(A)(ii) ("the plaintiff may dismiss and action without a court order by filing . . . a stipulation of dismissal signed by all parties who have appeared"); *see*

4

*also Barrientos v Ut-Battelle, LLC*, 284 F. Supp.2d 908, 916 (S.D. Ohio 2003) and *Letherer v. Alger Group, L.L.C.*, 328 F.3d 262, 265-66 (6th Cir. 2003), *recognized as overruled on other grounds in Blackburn v. Oaktree Capital Mgmt., LLC*, 511 F.3d 633, 636 (6th Cir. 2008).  Rule 15(a), however, permits a party to amend its pleading by leave of court, which "shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a)(2).

The Court recognizes that filings are to be construed by their substantive content and not by their labels; therefore, the Court will construe Plaintiff's voluntary dismissal motion as a motion to amend under Rule 15.

**B.  Discussion**

Conceding that some of her claims are barred in federal court by Eleventh Amendment sovereign immunity, Plaintiff has moved to voluntarily dismiss without prejudice her claims involving state law, Section 1981, and the ADEA.  This Court has construed Plaintiff's motion as one to amend her complaint under Rule 15(a)(2).  For the reasons that follow, this Court finds Plaintiff's motion to be well taken.

The Rule 15 standard of "when justice so requires" has generally been viewed with liberality by courts considering motions to amend.  *Howard v. Kerr Glass Mfg. Co.*, 699 F.3d 330, 333 (6th Cir. 1983).  Amendments will only be denied when the non-moving party can show "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." *Roskam Baking Co. v. Lanham Machinery Co., Inc.*, 288 F.3d 895, 906 (6th Cir. 2002) (*citing Foman v. Davis*, 371 U.S. 178, 182 (1962)).  In the present case, the Medical Center has not

shown that it would be inappropriate to allow Plaintiff to amend her complaint and dismiss her foreclosed claims without prejudice.

The Medical Center does not allege that Plaintiff has been unreasonably dilatory in presenting her claims. Instead, the Medical Center argues that since Plaintiff's counsel, representing a different client, had previously filed similar claims against the Medical Center that were dismissed for Eleventh Amendment immunity, Plaintiff's claims should be dismissed with prejudice as a "consequence" of her counsel's actions. (ECF No. 12 at 4.) This argument is not well taken. It would certainly be concerning if Plaintiff's counsel was intentionally delaying the litigation process by filing a claim he knew would be foreclosed in federal court. Yet, even if this were the case, it would not serve the interests of justice to visit the consequences on Plaintiff in the present matter.

The Medical Center further suggests that it would be prejudiced by allowing Plaintiff to amend because of the resources it has spent litigating this claim. It cannot be denied that the Medical Center has invested some effort and expense in addressing Plaintiff's complaint. However, this fact alone does not entitle the Medical Center to denial of Plaintiff's motion and dismissal with prejudice. When considering motions to amend, courts should consider "whether the assertion of the new claim or defense would: require the opponent to expend significant additional resources to conduct discovery and prepare for trial; significantly delay the resolution of the dispute; or prevent the plaintiff from bringing a timely action in another jurisdiction." *Haggard v. Ossege*, No. 2:09-cv-44, 2011 WL 1871244 at *2 (S.D. Ohio May 16, 2011) (citing *Phelps v. McClellan*, 30 F.3d 658, 662-63 (6th Cir. 1994)). In the matter *sub judice*, allowing

Plaintiff to amend her complaint would not unreasonably delay the resolution of the dispute. According to the Preliminary Pretrial Order issued by the Court in May 2011, motions for amendment and joinder are not even due until October 1, 2011, and discovery is not due to be completed until March 30, 2012.  (ECF No. 15.)  Given the liberality of the amendment standard and the considerable time remaining before the amendment and discovery deadlines in this matter, allowing Plaintiff to amend her claim would not prejudice the Medical Center.

The interests of justice weigh in favor of granting Plaintiff's motion to amend, and the Medical Center has offered no compelling reason for dismissal with prejudice.  The Medical Center expresses concern for expending further resources on the case in the future, but "the mere prospect of a second lawsuit" is not sufficient grounds for dismissal with prejudice.  *Grover v. Eli Lilly & Co.*, 33 F.3d 716, 718 (6th Cir. 1994).  The default posture of federal courts is to grant motions to amend pleadings unless prejudice to the non-moving party would result. Because such prejudice has not been shown, the Court **GRANTS** Plaintiff's motion to amend her pleading to remove her state law, Section 1981, and ADEA claims.

### III.  The Medical Center's Motion to Dismiss

**A.  Standard**

The Medical Center has moved for dismissal of Plaintiff's Title VII race discrimination claims under Federal Rule of Civil Procedure 12(b)(1), which permits parties to file motions for dismissal due to lack of subject matter jurisdiction.  There has been some confusion in the federal courts as to whether motions to dismiss for failure to exhaust administrative remedies are appropriately treated under Rule 12(b)(1) or Rule 12(b)(6).  *Schaefer v. U.S. Postal Service*, 254

F. Supp. 2d 741, 745, n. 5 (S.D. Ohio 2002). While this issue has not been addressed by the Supreme Court in the context of Title VII, the Sixth Circuit has held that the exhaustion defense should be addressed under Rule 12(b)(6). *Youseff v. Ford Motor Co., Inc.*, No. 99-3608, 2000 WL 799314 at *3 n. 3 (6th Cir. 2000); *Lawrence v. Dixon Ticonderoga Co.* 205 F. Supp. 2d 806, 813-14 (N.D. Ohio 2004); *Schaefer*, 254 F. Supp. 2d at 745. Therefore, the Medical Center's motion will be treated as a 12(b)(6) motion for dismissal for failure to state a claim upon which relief can be granted.

Federal Rule of Civil Procedure 12(b)(6) requires an assessment of whether the party asserting a claim has set forth a claim upon which the Court may grant relief. This Court must construe the pleading in favor of the party asserting the claim, accept the factual allegations contained in that party's pleading as true, and determine whether the factual allegations present a plausible claim. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007). The Supreme Court has explained, however, that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Accordingly, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950.

To be considered plausible, a claim must be more than merely conceivable. *Bell Atlantic Corp.*, 550 U.S. at 556; *Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007). What this means is that "[a] claim has facial plausibility when the

8

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. The factual allegations of a pleading "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. *See also Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295 (6th Cir. 2008).

**B. Discussion**

The Medical Center has moved to dismiss Plaintiff's claims for relief under state law, Title VII, Section 1981, and the ADEA. As explained *supra*, the Court grants Plaintiff's motion to amend her complaint to remove her state law claims and her claims under Section 1981 and the ADEA. As to Plaintiff's race discrimination claims filed under Title VII, the Medical Center argues that the discrimination claim should be dismissed because Plaintiff did not explicitly mention race discrimination in her OCRC or EEOC complaints. Because of this, the Medical Center contends that Plaintiff has failed to exhaust her administrative remedies and is foreclosed from bringing a race discrimination claim in federal court. This Court finds the Medical Center's argument to be well taken.

Filing an EEOC complaint against a party is a necessary prerequisite for filing a Title VII suit in federal court. *Jones v. Truck Drivers Local Union No. 299*, 748 F.2d 1083, 1086 (6th Cir. 1984). The Sixth Circuit requires this for two reasons. An EEOC complaint "gives notice to the alleged wrongdoer of its potential liability and enables . . . [the] EEOC to initiate conciliation procedures in attempt to avoid litigation." *Dixon v. Ashcraft* 392 F.2d 212, 217 (6th Cir. 2004). Courts have recognized that those who file EEOC complaints will often be lay complainants

acting without counsel. *E.E.O.C. v. Bailey*, 563 F.2d 439, 446 (6th Cir. 1977) (citing *Tipler v. E.I. DuPont deNemours & Co.*, 443 F.2d 125, 131 (6th Cir. 1971)). Therefore, the exhaustion requirement is met either if the claim is filed explicitly or if "the claim can be reasonably expected to grow out of the EEOC charge." *Hopson v. DaimerChrysler Corp.*, 157 Fed. Appx. 813, 817 (6th Cir. 2005). In considering issues of exhaustion, courts are encouraged "to give charges of discrimination a 'liberal construction,' " but the statement of the charge must be sufficient to give the employer notice of the complaint and an opportunity to investigate and respond to the complaint. *Ang v. Proctor & Gamble Co.* 715 F. Supp. 851, 853 (S.D. Ohio 1989) (citing *Farmer v. ARA Services, Inc.*, 660 F.2d 1096, 1105 (6th Cir.1981)).

In the present case, Plaintiff did not explicitly file a race discrimination claim with the OCRC or EEOC. In each of her three charges, Plaintiff signed a form that included a list of boxes to be checked for the type of discrimination involved in the complaint, including a box to specifically indicate "Race/Color" discrimination. The form also required a "detailed statement of the facts" that the complainant believed "indicate[d] an unlawful discriminatory practice." (ECF No. 5-1 at 2, 6, 12.) In Plaintiff's first complaint, the only box checked was for age discrimination. In her second complaint, boxes were checked for age discrimination and retaliation for her previous complaint. Plaintiff's third complaint only explicitly alleged retaliation. The box for discrimination based on "Race/Color" was not checked on any of Plaintiff's three complaints, and none of her descriptions mentioned race discrimination in any form.

Plaintiff argues that, even if her claim for racial discrimination was not explicit, it could have been "reasonably expected to grow out of the charge[s]" that she made.  (ECF No. 10 at 7) (citing *Tipler v. E.I. DuPont deNemours & Co.*, 443 F.2d 125, 131 (6th Cir. 1971)).  The Sixth Circuit has held that claims are reasonably related for the purposes of exhaustion when "facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim."  *Weigel v. Baptist Hosp. of East Tenn.*, 302 F.3d 367, 380 (6th Cir. 2002).

In this case, it would not have been reasonable for the OCRC or the EEOC to investigate claims of race discrimination in order to address any of Plaintiff's three separate discrimination/retaliation charges.  Plaintiff's first complaint, which was signed by Plaintiff and presented to the Medical Center pending the OCRC's investigation in December 2009, was explicitly limited to age discrimination.  Although Plaintiff may have mentioned race discrimination in her initial letter to the Medical Center's human resources department in October 2009, this charge did not make its way into the official complaint that was submitted to the OCRC and the EEOC.  Given the contents of this complaint, the Medical Center would have had no reason to suspect that it was the focus of an investigation of race discrimination.

Plaintiff's second complaint, filed in April 2010, also charged the Medical Center with age discrimination, along with retaliation.  Plaintiff claims in her response to the Medical Center's motion to dismiss that, because she had discussed race discrimination in her October 2009 letter to the Medical Center's HR department, her retaliation complaint in this second OCRC/EEOC charge was inextricably linked to this prior race discrimination discussion.  (ECF No. 10 at 5.)  However, the retaliation claim in the April 2010 complaint makes no reference to

11

the Plaintiff's October 2009 HR letter.  The complaint alleges that Plaintiff was disciplined because she "filed a complaint of discrimination in December 2009," and that "prior to filing my charge in December 2009, my documentation had not been an issue."  (ECF No. 5-1 at 6.)  Since the December 2009 charge did not mention discrimination based on race or color, there would have been no need to investigate race discrimination in order to address Plaintiff's retaliation claim.  In addition, there would have been no way for the Medical Center to know, based on the second OCRC/EEOC complaint, that race discrimination was at issue.

Similarly, Plaintiff's third complaint, also filed in April 2010, alleged that the Medical Center had retaliated against Plaintiff.  The charge alleged that Plaintiff was terminated "for filing OCRC claim number COL A1 (37453) [her previous complaint charging retaliation and age discrimination that had been filed earlier in April]."  (ECF No. 5-1 at 12.)  Again, there would have been no need for the OCRC to consider race discrimination in order to investigate this claim.

Plaintiff contends that the failure to indicate race discrimination on the complaint forms was caused by a mistake on the part of the OCRC representatives who completed the employment discrimination charge forms, and that this "mere technicality" should not preclude her race discrimination claim.  (ECF No. 10 at 7-8.)  This argument is not well taken.  First, it is unlikely that the failure to check the "Race/Color" box on the charge form on three separate occasions was the result of a clerical mistake.  However, even if this were the case, Plaintiff still had the opportunity to review each form before she signed it, indicating that the charge was "true to the best of [her] knowledge."  (ECF No. 5-1 at 2, 6, 12.)  If race discrimination was indeed

12

one of her complaints against the Medical Center, she could have easily had the appropriate box marked on the form or mentioned race in her description of the alleged discriminatory practices. Either of these actions would have served as appropriate notice to the Medical Center that racial discrimination was included in Plaintiff's charges.

In addition, Plaintiff's failure to identify race discrimination on the charge form is more than a "mere technicality." The Sixth Circuit has held that the purpose of the exhaustion requirement is to "trigger investigation, which gives notice to the alleged wrongdoer of its potential liability." *Dixon*, 392 F.3d at 217. This notice is meant to allow the employer "an opportunity to participate in a complete investigation of such an allegation and also the opportunity to participate in meaningful conciliation discussions." *Ang*, 715 F.Supp at 854. The complete absence of a race discrimination reference in Plaintiff's charges would have suggested to the Medical Center that it had no potential liability under Title VII for alleged race discrimination against Plaintiff. Furthermore, the Medical Center would have found it unnecessary to internally investigate race discrimination (beyond what it had already investigated in October 2009 as a result of Plaintiff's HR letter).

Federal courts have repeatedly held that the failure to indicate the type of discrimination being claimed on a charge form is more than a "mere technicality," and could be grounds for dismissing a plaintiff's claim. *See, e.g.*, *Abeita v. TransAmerica Mailings, Inc.*, 159 F.3d 246, 250 (6th Cir. 1998); *Davis v. Sodexho, Cumberland College Cafeteria*, 157 F.3d 460, 462-63 (6th Cir. 1998); *Turner v. Akron*, No. 5:06CV3023, 2008 WL 45376, at *6 (N.D. Ohio Jan. 2, 2008). In *Davis*, the Sixth Circuit held that the plaintiff could not bring a Title VII action for age

13

discrimination because of her failure to exhaust her administrative remedies. 157 F.3d at 462-63. The plaintiff had filed a charge with the EEOC, checking boxes on the charge form for "race" and "other," but not "age." *Id.* Because of this omission, and because there was no other indication in the plaintiff's charge that age discrimination was at issue, the court found that her age claim was barred, and that "the scope of a plaintiff's complaint 'does not automatically expand due to . . . membership in more than one minority group.' " *Id.* at 464 (citing *Ang v. Proctor & Gamble Co.*, 932 F.2d 540, 546 (6th Cir. 1991)). The court went on to say that "the charge filing requirement would be written out of the law, and the triggering and conciliation functions disabled" if the plaintiff's arguments were accepted. *Id.*

While it is true that Title VII's exhaustion requirement should generally be construed liberally, there are certain baseline requirements that must be met in order to provide fair notice to the employer and to the commission charged with investigating the claim. In this case, these requirements were not met. Neither the Medical Center nor the OCRC/EEOC could have reasonably expected a race discrimination claim to grow out of the three forms filed by Plaintiff, none of which mentioned or referenced race. Therefore, the Court **GRANTS** the Medical Center's motion to dismiss as it relates to Plaintiff's Title VII claims for race discrimination. Due to the Court's ruling *supra* on Plaintiff's motion to voluntarily dismiss her state law, Section 1981, and ADEA claims, the Medical Center's motion to dismiss as it relates to these claims is **DENIED AS MOOT**.

## IV.  Conclusion

For the reasons set forth above, the Court **GRANTS** Plaintiff's motion to amend her complaint to remove her state law, Section 1981, and ADEA claims.  (ECF No. 9.)  In addition, the Court **GRANTS** in part and **DENIES AS MOOT** in part the Medical Center's motion to dismiss.  (ECF No. 5.)  Specifically, the Court grants the motion as it relates to Plaintiff's Title VII race discrimination claims and denies as moot the motion as it relates to Plaintiff's state law, Section 1981, and ADEA claims.

**IT IS SO ORDERED**

/s/ Gregory L. Frost
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE