UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

DEBORAH L. COLEMAN,

       Plaintiff,                  Case No. 2:11-cv-0049
                                         JUDGE GREGORY L. FROST
      v.                                Magistrate Judge E.A. Preston Deavers

THE OHIO STATE UNIVERSITY
MEDICAL CENTER,

       Defendant.

## OPINION AND ORDER

This matter is before the Court on Defendant The Ohio State University Medical Center's Motion for Summary Judgment (ECF No. 33), Plaintiff Deborah L. Coleman's Memorandum Contra (ECF No. 36), and Defendant's Reply in Support (ECF No. 40). For the reasons set forth below, Defendant's Motion is **GRANTED** and judgment shall be entered in Defendant's favor.

### I.  Background

Plaintiff Coleman worked as a nurse at The Ohio State University Medical Center ("Medical Center") for more than 20 years until her employment was terminated in April 2010. At the time of her termination, Plaintiff was employed as a Registered Staff Nurse in the Medical Center's Medical-Surgical unit.

In January 2008, Kimberly Weirick, another Medical Center employee, became Plaintiff's supervising nurse. Under Weirick's supervision, Plaintiff alleges that she was subject to consistent verbal harassment, belittling, and unjustified disciplinary action. According to Plaintiff, this treatment included the refusal to allow her to request days off work, an action Plaintiff alleges was contrary to the Medical Center's policy. Plaintiff claims that she

complained of this mistreatment in 2008 to another nurse manager, Katy Huth, and specifically complained of "unfair practices, racism, retaliation, and [Plaintiff's] workload." (Coleman Aff. ¶ 8, ECF No. 36-1.) Plaintiff also complained of "discrimination, retaliation, harassment and unfair treatment" during an August 19, 2009 corrective action hearing, which was convened after Weirick formally requested disciplinary action against Plaintiff for unsatisfactory performance related to patient care. (*Id.* at ¶ 19; Weirick Aff. ¶ 21 and Exh. N, ECF No. 33-1.) Plaintiff complained yet again of discrimination, specifically age and race discrimination, in a written complaint submitted to The Ohio State University's Office of Human Resources on October 31, 2009. (Coleman Aff. ¶ 10 and Exh. A-1, ECF No. 36-1.) Plaintiff contends that nothing was done in response to her complaints of discrimination. (*Id.* at ¶¶ 10, 19.)

In response to what she perceived as ongoing workplace mistreatment, Plaintiff filed three charges with the Ohio Civil Rights Commission ("OCRC"), each of which was also dual filed with the federal Equal Employment Opportunity Commission ("EEOC").[1] In the first charge of discrimination, filed on December 9, 2009, Plaintiff alleged that the Medical Center

---

[1] One federal court in Ohio has summarized the procedure for "dual filing" in the OCRC and EEOC as follows:
> [I]n the State of Ohio, all administrative charges of this type of employment discrimination are "dual filed." That means that, if a complainant files a charge of employment discrimination in the OCRC, the OCRC automatically forwards a copy of the charge to the EEOC which, in turn, opens up a file and gives the charge an EEOC number. However, the EEOC allows the OCRC to conduct the investigation. . . . Thus, the EEOC charge is identical to the OCRC charge.

*Ross v. ITT Cleveland Motion Control*, No. 1:09-cv-2220, 2010 U.S. Dist. LEXIS 18651, at *8-*9 (N.D. Ohio Mar. 2, 2010). Similarly, in this case, it appears from the record that Plaintiff's OCRC charges were dual-filed with the EEOC and that the OCRC was the agency tasked with investigating the charges. (Letters of Determination, ECF No. 5-1, Exhs. 4-6.)

discriminated against her on the basis of her age.  Her allegations of discrimination were as follows:

>   1. I am over forty years old.  I have been employed by the Respondent [Medical Center] since May 1987, most recently as a Registered Nurse.  I have been harassed and disciplined by the Respondent.
>
>   2. Between June 9, 2009 and August 15, 2009, Manager Kim Weirick, over forty years old, harassed and disciplined me.
>
>   3. I believe that I was harassed and disciplined because of my age, over forty because:
>       a. Kim Weirick continually verbally reprimanded me for performance issues, that were actually initiated by co-workers under the age of forty
>       b. On or about July 1, 2009, Kim Weirick removed me from the position of Charge Nurse for no reason, and replaced me with an employee under forty years of age.

(OCRC Charge, ECF Nos. 5-1 and 34-6.)  Nowhere in the charge did Plaintiff refer to race discrimination or to complaints of race discrimination that she previously made to her employer.

On April 1, 2010, Plaintiff filed another charge of discrimination with the OCRC and EEOC.  Plaintiff filed this charge just a few weeks after the Medical Center placed her on administrative leave.  Plaintiff only checked the boxes for "Age" and "Retaliation" as the bases upon which she alleged the Medical Center to have discriminated against her.  (OCRC Charge, ECF Nos. 5-1 and 34-7.)  As the acts of discrimination allegedly perpetrated by the Medical Center, Plaintiff alleged the following in her April 1, 2010 charge:

>   1. I am age 58 and filed a complaint in December 2009.  I have been employed by the above-named Respondent since May 1987, most recently in the position of Registered Nurse (RN.) [sic] On March 16, 2010, I was placed on administrative leave.
>
>   2. On March 16, 2010, Kim Weirick, age 48, non-grievant, Nurse Manager, informed me I was on administrative leave pending the outcome of an investigation.

>   3. I believe I was placed on administrative leave due to consideration of my age, 58, and in retaliation for engaging in protected activity because:
>      a. Respondent questioned my documentation. Prior to my filing a charge in December 2009, my documentation had not been an issue.

(*Id.*)  Like the previous December 2009 charge, Plaintiff's April 1, 2010 charge of discrimination did not allege that the Medical Center discriminated against her on the basis of race.  Nor did the charge allege that the Medical Center retaliated against Plaintiff for any complaints of race discrimination she made.  As to both the December 2009 and April 2010 charges, the OCRC investigated and dismissed both, determining that there was no probable cause to believe that the Medical Center had unlawfully discriminated against Plaintiff.  (Letters of Determination, ECF No. 5-1 at 17-20.)

The Medical Center terminated Plaintiff's employment in April 2010 after a series of documented issues with Plaintiff's work performance.  Immediately following her termination, Plaintiff filed a third complaint with the OCRC, again alleging unlawful discrimination.  Plaintiff's April 14, 2010 charge identified her termination as the discriminatory act and checked the box labeled "Retaliation" as the basis upon which she alleged the Medical Center discriminated against her.  (OCRC Charge, ECF Nos. 5-1 and 34-8.)  Plaintiff elaborated on the Medical Center's alleged discriminatory acts as follows:

>   1. I previously filed a civil rights complaint with the OCRC.  I have been employed by the Respondent as of May 1987, most recently as a Registered Nurse.  I was terminated.
>
>   2. On April 5, 2010, I was notified in the mail by Tom Ramey, Director of Human Resources, that I was terminated for unsatisfactory services, as of April 14, 2010.
>
>   3. I believe that I was terminated in retaliation for filing OCRC claim

>>number COL A1 (37453) on April 1, 2010 because
>>a. On or about February 23, 2010, I was advised by Nurse Manager Kim Weirick, that my job performance was satisfactory.
>>b. I had not worked since March 15, 2010, since being placed on administrative leave pending an investigation for my work performance.
>>c. Since filing my April 1, 2010 complaint, the Respondent sent me a termination notice on April 5, 2010, stating that my job performance was substandard.

(*Id.*) Just as in her previous two charges filed with the OCRC, Plaintiff did *not* allege that the Medical Center discriminated against her on the basis of her race. The April 14, 2010 charge merely referred back to the charge she had filed on April 1, 2010, and alleged "retaliation" for having filed that "complaint." (*Id.*) After an investigation, the OCRC dismissed the April 14, 2010 charge, finding no probable cause to believe that the Medical Center engaged in unlawful discrimination. (Letter of Determination, ECF No. 5-1, at 21.)

Plaintiff filed this lawsuit on January 13, 2011. In her Complaint, Plaintiff alleged four claims for relief — (1) age discrimination under the Age Discrimination in Employment Act of 1967 ("ADEA") (29 U.S.C. § 621 *et seq.*) and Ohio Rev. Code § 4101.17 *et seq.*; (2) racial discrimination, harassment, and retaliation under Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e *et seq.*), 42 U.S.C. § 1981, and Ohio Rev. Code § 4112.02 ; (3) state-law claims for wrongful discharge, breach of implied contract, and promissory estoppel; and (4) a state-law claim for intentional infliction of emotional distress. (Compl. 8-12, ECF No. 2.) The Medical Center moved to dismiss all of Plaintiff's state law claims, federal race discrimination claims filed under Title VII and 42 U.S.C. § 1981, and age discrimination claims filed under the ADEA. (Def.'s Mot. To Dismiss, ECF No. 5.) The Medical Center argued that this Court could not exercise jurisdiction over Plaintiff's Title VII race discrimination claims because of Plaintiff's

5

failure to exhaust her administrative remedies. In addition, the Medical Center argued that Plaintiff's remaining claims were precluded as a matter of law because of the Medical Center's immunity under the Eleventh Amendment to the United States Constitution. (*Id.*) Defendant did not explicitly move to dismiss Plaintiff's Title VII retaliation claims.

In response to the Medical Center's Motion to Dismiss, Plaintiff conceded the absence of this Court's jurisdiction over her Section 1981, ADEA, and state-law claims on Eleventh Amendment immunity grounds and moved to voluntarily dismiss those claims from the case (which this Court construed as a motion to amend the complaint to drop these claims). (Opinion and Order 5-7, ECF No. 19.) Plaintiff opposed, however, the motion to dismiss her race discrimination claims brought under Title VII. This Court granted the Medical Center's motion to dismiss the Title VII race discrimination claims and granted Plaintiff's motion to amend her Complaint to remove her Section 1981, ADEA, and state-law claims. (*Id.* at 7, 14.)

The Court's ruling left only Plaintiff's Title VII retaliation claim left for adjudication. On that claim, the Medical Center now seeks summary judgment in its favor.

## II.  Discussion

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *See Muncie Power Prods., Inc. v. United Tech. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).

In viewing the evidence, the Court must draw all reasonable inferences in favor of the nonmoving party, which must set forth specific facts showing that there is a genuine issue of material fact for trial. *Id.* (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)); *see also Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234 (6th Cir. 2003). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Muncie*, 328 F.3d at 873 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). Consequently, the central issue is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Hamad*, 328 F.3d at 234-35 (quoting *Anderson*, 477 U.S. at 251-52).

### A. Title VII Retaliation

After this Court's earlier Order and Opinion dismissing various claims from this lawsuit, Plaintiff concedes that her "retaliation" claim is the only one the remains for adjudication. (Pl.'s Memo. Contra 1, ECF No. 36.) More specifically, Plaintiff alleges a "retaliation" claim under Title VII, based on a theory of race discrimination. (*Id.* at 9-10; *see also* Compl. 10, ECF No. 2.) Under Title VII's anti-retaliation provision, an employee is protected against employer retaliation for opposing any practice that the employee reasonably believes to be a violation of Title VII. *Johnson v. University of Cincinnati*, 215 F.3d 561, 578-79 (6th Cir. 2000). Specifically, the statute makes it "an unlawful employment practice for an employer to discriminate against any of his employees … because he has opposed any practice made an unlawful employment practice by this subchapter [42 U.S.C. §§ 2000e-2000e-17], or because he

has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter [42 U.S.C. §§ 2000e-2000e-17]." 42 U.S.C. § 2000e-3(a).

The Medical Center argues that the Court need not even reach the merits of Plaintiff's Title VII retaliation claim because she has failed to exhaust her administrative remedies with regard to *any* Title VII claim. (Def.'s Mot. Summ. J. 17, ECF No. 33.)  Indeed, filing an administrative charge of discrimination with the EEOC is a necessary prerequisite to bringing a Title VII claim before the federal courts. *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 361 (citing 42 U.S.C. § 2000e-5(e)(1)).  And in this Court's Opinion and Order dismissing various claims alleged in the Complaint, this Court found that Plaintiff's Title VII race discrimination claims were barred by her failure to allege race discrimination in any of her three charges of discrimination filed with the OCRC and EEOC.  (Opinion and Order 9-14, ECF No. 19.)  The Medical Center argues that this Court's reasoning in its earlier Opinion and Order applies with equal force to Plaintiff's remaining claim for Title VII retaliation and that such claim is also barred by Plaintiff's failure to file an appropriate charge of Title VII retaliation with the OCRC or EEOC.  The Court agrees with the Medical Center.

In the case of Title VII retaliation, the Sixth Circuit has held that "retaliation claims based on conduct that occurred before the filing of the EEOC charge must be included in that charge," lest such claims be barred by the failure to exhaust the mandatory administrative remedy provided by statute. *Strouss v. Mich. Dep't of Corr.*, 250 F.3d 336, 342 (6th Cir. 2001); *accord Abeita v. TransAm. Mailings, Inc.*, 159 F.3d 246, 254 (6th Cir. 1998); *Ang v. Procter &*

8

*Gamble Co.*, 932 F.2d 540, 547 (6th Cir. 1991).[2] That said, courts must liberally construe EEOC charges filed (as here) *pro se* by lay complainants. *Id.* at 546; *see also Davis v. Sodexho, Cumberland Coll. Cafeteria*, 157 F.3d 460, 463 (6th Cir. 1998). Thus, courts will deem the exhaustion requirement satisfied for allegations of discrimination that are not necessarily covered on the face of the charge if an EEOC investigation of those allegations could have been "reasonably expected to grow out of the charge of discrimination." *Ang* at 545 (internal quotations omitted). Therefore, "where facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from bringing suit on that claim." *Davis*, 157 F.3d at 463.

As this Court previously found, Plaintiff did not explicitly allege race discrimination in any of her three charges filed with the OCRC. (Opinion and Order 10, ECF No. 19.) None of the charges checked the box for "Race/Color" discrimination on the form provided. The first charge filed on December 9, 2009 alleged only age discrimination in the form of discipline and harassment; the second charge filed on April 1, 2010 again alleged age discrimination in the form of discipline and also alleged "retaliation" for having filed her previous OCRC charge; and the final charge filed on April 14, 2010 alleged "retaliation" for the Medical Center having terminated her employment because she filed the April 1, 2010 OCRC charge. (OCRC Charges,

---

[2] Retaliation claims are generally excepted from the exhaustion requirement when such claims arise from acts taking place *after* the filing of the EEOC charge. *Abeita* at 254 (citing *Ang* at 546-47). This exception to the exhaustion requirement does not apply, however, to retaliation claims based on conduct that occurred before the administrative charge was filed. *Id.* In this case, Plaintiff relies on alleged retaliatory conduct that occurred before the OCRC charges in which she asserted retaliation.

ECF Nos. 34-6, 34-7, and 34-8.) In every charge, in the section where Plaintiff was required to include a "detailed statement of the facts that you believe indicate an unlawful discriminatory practice," Plaintiff referred to either age discrimination or to her belief that she was retaliated against for having filed a previous OCRC charge. (*Id.*) In none of the three charges did Plaintiff allege any act of race discrimination or even a belief that she was the victim of unlawful race discrimination.

Although Plaintiff alleged "retaliation" in the last two of her three OCRC charges, this fact does not automatically mean that she exhausted her administrative remedies with regard to *Title VII retaliation*. Plaintiff's April 1, 2010 and April 14, 2010 charges were quite specific in what her theory of "retaliation" was. The April 1, 2010 charge expressly alleged Plaintiff's belief that she was placed on administrative leave "in retaliation" for having filed her December 2009 charge — a charge that alleged only age discrimination. (ECF Nos. 34-6 and 34-7.) Thus, on its face, the April 1, 2010 charge alleged nothing more than retaliation *under the ADEA*. Likewise, the April 14, 2010, charge was limited on its face to, at most, an ADEA retaliation theory. The April 14, 2010 charge alleged that the Medical Center terminated Plaintiff's employment in retaliation for filing the April 1, 2010 charge. (ECF No 34-8.) Thus, in substance, the April 14, 2010 charge effectively alleged a second instance of ADEA retaliation — the charge referred back to a previous charge of retaliation, which, in turn, referred back to a charge *of age discrimination* and nothing more.

Under Sixth Circuit precedent, it is not necessarily fatal to Plaintiff's Title VII claim that she did not explicitly mention Title VII retaliation in her OCRC charges of discrimination. But in order for the Court to treat Plaintiff's charges of "retaliation" as having covered a Title VII

retaliation theory, the charges must, at a minimum, relate facts that "would prompt the EEOC to investigate a different, uncharged claim." *Davis*, 157 F.3d at 463; *see also Younis*, 610 F.3d at 362; *Weigel v. Baptist Hosp. of E. Tenn.*, 302 F.3d 367, 380 (6th Cir. 2002). In this case, however, Plaintiff did not do that. The facts set forth in Plaintiff's charge explicitly limit her allegation to that of age discrimination and, by extension, retaliation for having filed her charges *of age discrimination*. With no allegations of race discrimination or retaliation based on *Title VII* protected activity, there is nothing in the Plaintiff's charges that would have reasonably prompted the OCRC or EEOC to investigate claims of race discrimination. *See Younis*, 610 F.3d at 363 (finding plaintiff's retaliation claim barred by failure to exhaust when his EEOC charge alleged only discrimination on basis of religion and national origin); *Abeita*, 159 F.3d at 254 (holding that district court did not have jurisdiction to hear plaintiff's retaliation claim where plaintiff did not check the retaliation box or describe anything that indicates such a claim in the EEOC complaint); *Young v. DaimlerChrysler Group*, 52 F. App'x 637, 640 (6th Cir. 2002) (finding plaintiff's claim properly limited in scope to only age discrimination when plaintiff did not assert race discrimination in the EEOC charge). Nor has Plaintiff pointed the Court to a part of the record showing that the OCRC or EEOC actually investigated Title VII retaliation in connection with her charges. *See Davis*, 157 F.3d at 463 (noting that exhaustion requirement could be satisfied, despite claim being uncharged, "[w]hen the EEOC investigation of one charge in fact reveals evidence of a different type of discrimination against the plaintiff").

      In this case, the record does not reveal the presence of an exception that would obviate the need for Plaintiff to have presented her claim of Title VII retaliation in an OCRC/EEOC charge. The Court finds that the Medical Center has demonstrated the absence of a genuine

issue of material fact on the question of whether Plaintiff exhausted her administrative remedies with respect to a Title VII retaliation claim. In her memorandum contra the Medical Center's motion for summary judgment, Plaintiff's arguments are long on the merits of her retaliation theory, but offer nothing in response to the Medical Center's threshold argument that Plaintiff has failed to exhaust her administrative remedies as required by Title VII. Accordingly, the Medical Center is entitled to summary judgment on Plaintiff's Title VII retaliation claim.

### B.     ADEA Retaliation

Plaintiff's memorandum contra to the Medical Center's motion for summary judgment, focuses on a Title VII retaliation theory of liability. But to the extent Plaintiff's opposition to summary judgment can be construed to assert a claim for ADEA retaliation, Plaintiff still cannot escape summary judgment. Even though Plaintiff preserved in her OCRC charges a claim for ADEA retaliation by referencing age discrimination, this Court dismissed, on Plaintiff's Motion, all claims based on the ADEA. (Opinion and Order 5-7, ECF No. 19.) In any event, the Medical Center is immune from ADEA liability under the Eleventh Amendment. *See Latham v. Office of the Attorney Gen.*, 395 F.3d 261, 270 (6th Cir. 2005).

### III.  Conclusion

Defendant Medical Center raises additional arguments as to why Plaintiff cannot create a genuine issue of material fact for trial on her purported claim for Title VII retaliation. But in light of this Court's conclusion that Plaintiff failed to exhaust her administrative remedies, this Court has no occasion to reach these arguments. Having failed to satisfy the exhaustion requirement of Title VII, Plaintiff cannot proceed to the merits of her Title VII retaliation claim.

For the reasons set forth in this Opinion and Order, Defendant's Motion for Summary

Judgment is **GRANTED**.  The Clerk is **DIRECTED to ENTER JUDGMENT** in favor of Defendant.

    **IT IS SO ORDERED.**

                                      **/s/ Gregory L. Frost**
                                      **GREGORY L. FROST**
                                      **UNITED STATES DISTRICT JUDGE**